UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

CAROL ANN READY,

                        Plaintiff,        **FIRST AMENDED COMPLAINT**

vs.

DAILY HARVEST, INC.;
and JOHN DOE CORPORATIONS 1-5,

                                       Civil Action No.: 22-cv-05385

                        Defendants.
_____

## INTRODUCTION

Plaintiff Carol Ann Ready, by and through her attorneys, Heisman Nunes & Hull LLP and Marler Clark, LLP PS, alleges upon information and belief as follows:

## PARTIES

1.1    The Plaintiff is a resident of Tulsa, Oklahoma in the County of Tulsa, and is therefore a citizen of the State of Oklahoma.

1.2    The Plaintiff purchased and consumed an adulterated and/or contaminated food product, namely prepared "French Lentil + Leek Crumbles," manufactured, packaged, distributed, and/or sold by the Defendant Daily Harvest, Inc.

1.3    The Defendant, Daily Harvest, Inc., (hereinafter "Defendant" or "Daily Harvest") is incorporated in the State of Delaware with headquarters and principal place of business located at 1115 Broadway, Suite 1105, New York, NY 10010, in the County of New York, and is therefore a citizen of both the State of Delaware and the State of New York and subject to the personal jurisdiction in this Court.

1.4 Defendant Daily Harvest manufactured, packaged, distributed, and/or sold an adulterated and/or contaminated food product, namely "French Lentil + Leek Crumbles," to Plaintiff. On information and belief, Daily Harvest also developed the recipe for the prepared food product that caused Plaintiff's injuries as alleged in this complaint.

1.5 The Defendant John Doe Corporations 1-5, whose identities are currently unknown, are manufacturers, distributors, importers, packagers, brokers, and/or growers of the "French Lentil + Leek Crumbles" product, and/or its constituent ingredients, that caused Plaintiff's illness as well as the illnesses of other individuals sickened as a result of the subject outbreak.

## JURISDICTION AND VENUE

2.1 This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. section 1332(a) because the matter in controversy exceed $75,000.00 exclusive of costs and it is between citizens of different states.

2.2 Venue in the United States District Court of the Southern District of New York is proper pursuant to 28 U.S.C. section 1391(b)(1) because Defendant's principal place of business is located within the district and because the Defendant was subject to personal jurisdiction in this judicial district at the time of the commencement of this action.

## GENERAL ALLEGATIONS

### The 2022 Outbreak Linked to Daily Harvest French Lentil + Leek Bowls

3.1 According to the U.S. Food and Drug Administration, on June 19, 2022, Defendant Daily Harvest instituted a voluntary recall of approximately 28,000 units of French Lentil + Leek Crumbles produced between April 28 and June 17, 2022.

3.2 More than 470 instances of consumers experiencing illness or adverse reactions after consumption of the French Lentil + Leek Crumbles have been reported. The consumption of

Defendant's products has caused an array of serious health complications, from gastrointestinal illness to liver and gallbladder dysfunction.

3.3     Daily Harvest has stated that the approximately 28,000 units of the product were distributed to customers in the United States through direct online sale and through retail sales at stores in Chicago and Los Angeles. Daily Harvest also provided samples to a small number of customers and social media influencers.

3.4     The French Lentil + Leek Crumbles was a frozen, pre-made product packaged in a 12 oz. white pouch with the Daily Harvest logo at the top, "CRUMBLES" printed immediately below, and "French Lentil + Leek" printed in bold.

3.5     All lots of the French Lentil + Leek Crumbles product were ultimately recalled by the Defendant.

### Facts Relating to Defendants' Manufacture, Packaging, Distribution, and Sale of Contaminated, Defective Food Products that Caused Plaintiff's Injuries

3.6     On April 28, 2022, Daily Harvest announced the launch of the "Crumbles" product line, including the now-recalled French Lentil + Leek Crumbles.

3.7     Daily Harvest marketed these French Lentil + Leek Crumbles as a convenient, pre-made item that, after sauteing, can be added to other products, including those produced and marketed by Daily Harvest, for a complete meal. Daily Harvest marketed the Crumbles as "planet-friendly to add more nourishing plant protein into" customers' diets.

3.8     Daily Harvest's promotional materials state (as quoted here) that a "team of chefs and nutritionists" created the French Lentil + Leek Crumbles recipe, and that the product was an "easy to prepare and ready in minutes" way to lower customers' carbon footprint, and potentially "help you live longer."

3.9     Daily Harvest claims to work directly with farmers to grow organic products and "increase biodiversity" while avoiding synthetic chemicals.

3.10    Daily Harvest manufactures, packages, distributes and/or sells, directly all of its products, including the French Lentil + Leek Crumbles, to customers through online sales, through its own standalone retail stores in Chicago and Los Angeles. Additionally, Daily Harvest provides samples to a small number of customers, including social media influencers, to increase visibility and, ultimately, sales of the products.

3.11    Plaintiff purchased through online subscription Daily Harvest's French Lentil + Leek Crumbles and on two occasions consumed it. The product was contaminated and caused Plaintiff's injuries described below.

3.12    The French Lentil + Leek Crumbles consumed by Plaintiff contained contaminated ingredients, manufactured, packaged, distributed and/or sold by Daily Harvest.

3.13    The Defendants John Doe Corporations 1-5 are entities that either manufactured and distributed the French Lentil + Leek Crumbles product, or manufactured, distributed, imported, packaged, brokered, or grew and harvested the contaminated ingredients used in the manufacture of the French Lentil + Leek Crumbles product that caused Plaintiff's illness and the subject outbreak.

## **PLAINTIFF'S ILLNESS**

4.1     On May 3, 2022, Plaintiff purchased Defendant's French Lentil + Leek Crumbles through her online subscription from Daily Harvest. She consumed the product on May 7, 2022. Later in the day on May 7, 2022, Plaintiff began experiencing abdominal pain and gastrointestinal distress. Plaintiff also suffered right shoulder pain.

4.2     On May 8, 2022, Plaintiff's abdominal pain and gastrointestinal distress became intolerable and was accompanied by nausea and a headache. Plaintiff described her pain on May 8 as a 9 or 10 out of 10.

4.3     On the morning of May 9, 2020, Plaintiff's husband took her to the emergency room at St. John's Ascension Medical Center for medical evaluation. Plaintiff was given pain medication and doctors ordered several blood tests, a urine sample, an ultrasound, and a CT scan. She was later discharged and directed to eat a bland diet and manage her pain with over-the-counter pain medication.

4.4     Plaintiff once again purchased French Lentil + Leek Crumbles from Daily Harvest on March 17, 2022, which she consumed on May 28, 2022, for lunch. By 7 AM on May 29, 2022, Plaintiff was again experiencing abdominal and shoulder pain. By the early morning on May 30, Plaintiff's pain was severe enough to again warrant hospitalization and treatment with pain medication.

4.5     Testing conducted at the St. John's Ascension Medical Center Emergency Room revealed elevated liver enzymes, and Plaintiff was admitted to the hospital for further treatment. Plaintiff remained hospitalized for four days, during which time she was administered pain medication, and diagnosed with liver and gallbladder dysfunction. Plaintiff was informed this condition may cause her pain indefinitely.

4.6     Plaintiff met with her primary care doctor on June 7, 2022 and was advised by her doctor that instead of attempting to manage her pain, the recommended course of action was to remove her damaged gallbladder.  And on June 24, 2022, Plaintiff underwent surgery to remove her gallbladder.

4.7     Plaintiff has sustained serious personal injuries; suffered, and will continue to suffer, significant pain and other physical discomfort; incurred, and will continue to incur, substantial medical expenses; has missed, and will likely miss in the future, work and time necessarily dedicated to advancement in her profession; and remains at risk for future health complications with damages far in excess of $75,000.00, the jurisdictional threshold of this court.

## CAUSES OF ACTION

### Strict Liability – Count I

5.1     Plaintiff repeats and realleges all of the above allegations contained in paragraphs 1.1 through 4.7.

5.2     At all times relevant hereto, the Defendants were the manufacturers, packagers, distributors and/or sellers of the contaminated food product, or the product's contaminated ingredients, that was purchased and consumed by Plaintiff.

5.3     The contaminated food product that the Defendants manufactured, packaged, distributed, and/or sold was, at the time it left the Defendants' control, defective and unreasonably dangerous for its ordinary and expected use by the intended public, including Plaintiff, because Defendants' products were contaminated by a substance injurious to human health.

5.4     The contaminated food product that the Defendants manufactured, packaged, distributed, and/or sold was delivered to the Plaintiff without any change in its defective condition. The contaminated food product that the Defendants manufactured, packaged, distributed, and/or sold was used by Plaintiff in the manner expected and intended.

5.5     The Defendants owed a duty of care to the public, including Plaintiff, to manufacture, package, distribute and/or sell food that was not contaminated, that was fit for human

consumption, that was reasonably safe in construction, and that was free of pathogenic bacteria or other substances injurious to human health. The Defendants breached this duty.

5.6 The Defendants owed a duty of care to the public, including Plaintiff, to manufacture, package, distribute and/or sell food that was fit for human consumption, and that was safe to consume to the extent contemplated by a reasonable consumer. The Defendants breached this duty.

5.7 As a direct and proximate result of the defective and unreasonably dangerous condition of the contaminated food product that the Defendants manufactured, packaged, distributed and/or sold, as set forth above, Plaintiff sustained injuries and damages in an amount to be determined at trial.

## **Breach of Warranty – Count II**

5.8 Plaintiff repeats and realleges all of the above allegations contained in paragraphs 1.1 through 5.7.

5.9 The Defendants are liable to the Plaintiffs for breaching express and implied warranties that it made regarding its food product that Plaintiff purchased and consumed. These express and implied warranties include the implied warranties of merchantability and/or fitness for a particular use. Specifically, the Defendants expressly warranted, through their sale of food to the public and by the statements and conduct of their employees and agents, that the food that they manufactured, packaged, distributed and/or sold was fit for human consumption and not otherwise adulterated, contaminated, or injurious to health.

5.10 The contaminated food that the Defendants sold to Plaintiff would not pass without exception in the trade and was therefore in breach of the implied warranty of merchantability.

5.11    The contaminated food sold to Plaintiff was not fit for the uses and purposes intended, *i.e.,* human consumption; thus, the sale of this product to Plaintiff constituted a breach of the implied warranty of fitness for its intended use.

5.12    As a direct and proximate cause of the Defendants' breach of warranties, as set forth above, Plaintiff sustained injuries and damages in an amount to be determined at trial.

### Negligence – Count III

5.13    Plaintiff repeats and realleges all of the above allegations contained in paragraphs 1.1 through 5.12.

5.14    Defendants owed to Plaintiff a duty to use reasonable care in the manufacture, packaging, distribution, and/or sale of their food product, the observance of which duty would have prevented or eliminated the risk that Defendants' food product would become contaminated with any dangerous pathogen.  Defendants, however, breached this duty and were therefore negligent.

5.15    Defendants had a duty to comply with all federal, state and local statutes, laws, regulations, safety codes, and provisions pertaining to the manufacture, distribution, storage, and sale of their food product, but failed to do so, and were therefore negligent.  Plaintiff was among the class of persons designed to be protected by these statutes, laws, regulations, safety codes and provisions pertaining to the manufacture, packaging, distribution, and sale of similar food products. Defendants, however, breached this duty and was therefore negligent.

5.16    Defendants had a duty to properly supervise, train, and monitor their respective employees, and to ensure that their respective employees complied with all applicable statutes, laws, regulations, safety codes, and provisions pertaining to the manufacture, packaging,

distribution, and sale of similar food products. Defendants, however, breached this duty and was therefore negligent.

5.17    Defendants had a duty to use ingredients, supplies, and other constituent materials that were reasonably safe, wholesome, and free of defects, and that otherwise complied with applicable federal, state, and local laws, ordinances, regulations, codes, and provisions and that were clean, free from adulteration, and safe for human consumption. Defendants, however, breached this duty and were therefore negligent.

5.18    As a direct and proximate result of Defendants' negligence as described above, Plaintiff sustained injuries and damages in an amount to be determined at trial.

### Negligence *Per Se* – Count IV

5.19    Plaintiff repeats and realleges all of the above allegations contained in paragraphs 1.1 through 5.18.

5.20    Defendants had a duty to comply with all applicable state and federal regulations intended to ensure the purity and safety of their food product, including the requirements of the New York State's Agriculture and Markets Law and the Federal Food, Drug and Cosmetics Act (21 U.S.C. § 301, *et seq.*).

5.21    In breach of this duty, Defendants failed to comply with the provisions of the health and safety acts identified above, and, as a result, were negligent *per se* in their manufacture, distribution, packaging and/or sale of adulterated food.

5.22    As a direct and proximate result of conduct by Defendants that was negligent *per se*, Plaintiff sustained injuries and damages in an amount to be determined at trial.

## **DAMAGES**

6.1     Plaintiff has suffered general, special, incidental, and consequential damages as the direct and proximate result of the acts and omissions of Defendants, in an amount that shall be fully proven at the time of trial.  These damages include but are not limited to  past and future pain and suffering, past and future damages for loss of enjoyment of life, past and future emotional distress, past and future medical and related expenses, including pharmaceutical expenses, travel and travel-related expenses, past and future lost wages, and all other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

## **JURY DEMAND**

7.1     Plaintiff hereby demands a jury trial.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for judgment against the Defendants as follows:

A.     Ordering compensation for all general, special, incidental, and consequential damages suffered by Plaintiff because of Defendants' conduct.

B.     Awarding Plaintiff costs and expenses, including reasonable attorneys' fees to the fullest extent allowed by law; and

C.     Granting all such additional and/or further relief as this Court deems just and equitable.

DATED:      July 12, 2022
            New York, New York

                                  **HEISMAN NUNES & HULL LLP**

                By:     /s/Paul V. Nunes_____

                      Paul V. Nunes, Esq.
                      Bar No.: PN2853
                      69 Cascade Drive
                      Suite 102
                      Rochester, New York 14614
                      Telephone:  (585) 270-6922
                      pnunes@hnhattorneys.com


                      **MARLER CLARK, LLP, PS**

                By:     /s/ William D. Marler_____
                      William D. Marler, Esq., *pro hac vice* pending
                      The Standard Building
                      1012 1st Avenue, Fifth Floor
                      Seattle, Washington 98104
                      Telephone:  (206) 346-1888
                      bmarler@marlerclark.com

                      *Attorneys for Plaintiffs*