

## HEISMAN NUNES & HULL LLP

69 Cascade Drive, Suite 102, Rochester, New York 14614 • 585-270-6922 • www.HNHattorneys.com

PAUL VINCENT NUNES, PARTNER
(585) 270-6201
PNunes@HNHattorneys.com

July 15, 2022

Honorable Sarah L. Cave                                    **_VIA ECF_**
Magistrate Judge
U.S. District Court
Southern District of New York
500 Pearl Street, Room 1670
New York, New York 10007

> RE:    **Ready v. Daily Harvest, Inc., et al.**
>        **Civil Action No: 1:22-cv-05385-VSB**

Dear Judge Cave

The Plaintiff, Carol Ann Ready, requests leave to file a Second Amended Complaint adding claims against a new defendant, previously identified in her earlier pleading as a "John Doe Corporation", namely Second Bite Foods, Inc. d/b/a "Stone Gate Foods". Upon information and belief, Second Bite Foods, Inc. manufactured the food product that is the subject of this action at its facility in the State of Minnesota. Plaintiff has attached a copy of her proposed Second Amended Complaint to this letter.[1]

Plaintiff moves for the requested relief under Fed. R. Civ. Proc. 15(a)(2),[2] which allows for amendment "with the opposing party's written consent or the court's leave," which "[t]he court should freely give leave when justice so requires." Plaintiff believes that justice requires the requested relief because the inclusion of Second Bite Foods, Inc. as a named defendant in this action is necessary and indispensable to the complete resolution of Plaintiff's claims, as Second Bite Foods, Inc., upon information and belief, manufactured the food product which injured Plaintiff.

On Thursday, July 14, 2022, Plaintiff obtained information to support her claim that Second Bite Foods Inc. was the manufacturer the food product which injured her and thus was one of the "John Doe Corporations" named in the First Amended Complaint.

---

[1] Local Civil Rule 7.1(d) authorizes the filing of non-dispositive letter motions.

[2] Fed. R. Civ. Proc. 16's "good cause" standard is not at issue because Plaintiff's request to file an amendment was made before any deadline for amendment of pleadings, which here has not yet been established. Nevertheless, because prospective defendant Second Bite Foods Inc. is, upon information and belief, the manufacturer of the product at issue in this case, and because Plaintiff did not delay filing her request for amendment, good cause exists to grant Plaintiff leave to file this amended pleading.

Honorable Sarah L. Cave
July 15, 2022
Page 2


Therefore, Plaintiff has been diligent in both identifying Second Bite Foods, Inc. as the product manufacturer and moving to amend her complaint. As the only grounds upon which Second Circuit Courts have denied motions for leave to amend are "undue delay, bad faith, dilatory motive, [or] futility". Plaintiff further asserts that her motion is timely and based upon a good faith belief that Second Bite Foods is an indispensable party in this matter. *Sacerdote v. New York University*, 9 F.4th 95, 115 (2d Cir. 2021).

Also, Plaintiff's counsel, as representatives for plaintiffs in two related cases currently pending in this Court as well as New York State court, have concurrently filed amended complaints in those two actions adding Second Bite Foods, Inc. as a new party, alleging, upon information and belief, that it manufactured the contaminated product at issue. Those matters are: *Justin Albright v. Daily Harvest, Inc. et al*, Case Number: 1:22-cv-05987, filed in the United States District Court for the Southern District of New York; and *John Looby v. Daily Harvest, Inc. et al*, Index #: 155840/2022, filed in The Supreme Court of New York, County of New York.

For the foregoing reasons and under the cited authority, Plaintiff requests that her motion for leave to amend be granted, and that Plaintiff be permitted to file her proposed Second Amended Complaint.

Very Truly Yours,

*s/Paul V. Nunes*

Paul V. Nunes
*Attorney for Plaintiff*

PVN:jih
Attachment

cc:  All counsel via ECF (w/att.)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CAROL ANN READY,

Plaintiff,

**SECOND AMENDED COMPLAINT**

vs.

DAILY HARVEST, INC., and SECOND BITE
FOODS, INC., d/b/a "STONE GATE FOODS",
AND JOHN DOE CORPORATIONS 1-5,

Civil Action No.: 22-cv-05385

Defendants.

---

## INTRODUCTION

Plaintiff Carol Ann Ready, by and through her attorneys, Heisman Nunes & Hull LLP and Marler Clark, LLP PS, alleges upon information and belief as follows:

## PARTIES

1.1     The Plaintiff is a resident of Tulsa, Oklahoma in the County of Tulsa, and is therefore a citizen of the State of Oklahoma.

1.2     The Plaintiff purchased and consumed an adulterated and/or contaminated food product, namely prepared "French Lentil + Leek Crumbles," manufactured, packaged, distributed, and/or sold by the Defendant Daily Harvest, Inc.

1.3     The Defendant, Daily Harvest, Inc., (hereinafter "Defendant" or "Daily Harvest") is incorporated in the State of Delaware with headquarters and principal place of business located at 347 5th Avenue, Suite 1402, New York, NY 10016, in the County of New York, and is therefore

a citizen of both the State of Delaware and the State of New York and subject to the personal jurisdiction in this Court.

1.4     Defendant Daily Harvest manufactured, packaged, distributed, and/or sold an adulterated and/or contaminated food product, namely "French Lentil + Leek Crumbles," to Plaintiff. On information and belief, Daily Harvest also developed the recipe for the prepared food product that caused Plaintiff's injuries as alleged in this complaint.

1.5     Defendant Second Bite Foods, Inc., d/b/a "Stone Gate Foods," (hereinafter "Second Bite") is incorporated in the State of Minnesota with its principal place of business located at 5365 Shore Trail, Prior Lake, MN 55372. Therefore, Defendant Second Bite is a citizen of the State of Minnesota.

1.6     Defendant Second Bite owns and operates a manufacturing facility located at 4218 Valley Industrial Blvd. S. in Shakopee, MN. At this place of business, always relevant, Second Bite manufactured frozen fruits, juices, vegetables, and specialty foods, including specialty foods and other foodstuffs for Defendant Daily Harvest. Second Bite manufactured, for Daily Harvest, the French Lentil + Leek Crumbles product that is the source of the subject outbreak and was the cause of Plaintiff's illness and injuries.

1.7     The Defendant John Doe Corporations 1-5, whose identities are currently unknown, are manufacturers, distributors, importers, packagers, brokers, and/or growers of the "French Lentil + Leek Crumbles" product, and/or its constituent ingredients, that caused Plaintiff's illness as well as the illnesses of other individuals sickened because of the subject outbreak. These defendants are in some manner responsible for the acts, occurrences, and transactions set forth herein, and/or are the partners and/or alter ego(s) of the Defendant(s) named herein, and therefore

are legally liable to Plaintiff. Plaintiff will set forth the true names and capacities of the fictitiously named Doe Defendants together with appropriate specific charging allegations when ascertained.

## JURISDICTION AND VENUE

2.1     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. Section 1332(a) because the matter in controversy far exceeds $75,000.00 exclusive of costs and it is between citizens of different states.

2.2     Specifically, with respect to Defendant Second Bite, on information and belief, this Defendant manufactured the contaminated food items that are the subject of this action, with knowledge that the products would be distributed into the interstate marketplace, including to consumers in the States of Oklahoma and New York.

2.3     On its website located at www.stonegate-foods.com, Defendant Second Bite, which does business under its federally registered trademark STONE GATE FOODS, advertises itself as "the go-to co-packaging facility and private label manufacturer for top brands throughout the United States." Second Bite knew, at all relevant times, that Daily Harvest was an online, subscription-based food manufacturing and delivery service with a national customer/client base. Second Bite has been in business for approximately 41 years, and states on its website, identified above, that it has "had the privilege to serve the retail, food service and private label customers throughout the country" for the entirety of this period.

2.4     As a result of its above-described knowledge, its intentional provision of specialty food manufacturing services to customers across the country, and its knowledge that the products that it manufactured for Daily Harvest would be distributed in the interstate marketplace, including to consumers in the State of New York, Second Bite has sufficient "minimum

3

contacts" with the State of New York such that maintenance of this suit in this judicial district is appropriate, fair and just.

2.5     Venue in the United States District Court of the Southern District of New York is proper pursuant to 28 U.S.C. section 1391(b)(1) because Defendant Daily Harvest's principal place of business is located within the district and because all defendants are subject to personal jurisdiction in this judicial district at the time of the commencement of this action.

## GENERAL ALLEGATIONS

### The 2022 Outbreak Linked to Daily Harvest French Lentil + Leek Bowls

3.1     According to the U.S. Food and Drug Administration, on June 19, 2022, Defendant Daily Harvest instituted a voluntary recall of approximately 28,000 units of French Lentil + Leek Crumbles produced between April 28 and June 17, 2022.

3.2     More than 470 instances of consumers experiencing illness or adverse reactions after consumption of the French Lentil + Leek Crumbles have been reported. The consumption of Defendant's products has caused an array of serious health complications, from gastrointestinal illness to liver and gallbladder dysfunction.

3.3     Daily Harvest has stated that the approximately 28,000 units of the product were distributed to customers in the United States through direct online sale and through retail sales at stores in Chicago and Los Angeles. Daily Harvest also provided samples to a small number of customers and social media influencers.

3.4     The French Lentil + Leek Crumbles was a frozen, pre-made product packaged in a 12 oz. white pouch with the Daily Harvest logo at the top, "CRUMBLES" printed immediately below, and "French Lentil + Leek" printed in bold.

3.5     All lots of the French Lentil + Leek Crumbles product were ultimately recalled by the Defendant.

### Facts Relating to Defendants' Manufacture, Packaging, Distribution, and Sale of Contaminated, Defective Food Products that Caused Plaintiff's Injuries

3.6     On April 28, 2022, Daily Harvest announced the launch of the "Crumbles" product line, including the now-recalled French Lentil + Leek Crumbles.

3.7     Daily Harvest marketed these French Lentil + Leek Crumbles as a convenient, pre-made item that, after sauteing, can be added to other products, including those produced and marketed by Daily Harvest, for a complete meal. Daily Harvest marketed the Crumbles as "planet-friendly to add more nourishing plant protein into" customers' diets.

3.8     Daily Harvest's promotional materials state (as quoted here) that a "team of chefs and nutritionists" created the French Lentil + Leek Crumbles recipe, and that the product was an "easy to prepare and ready in minutes" way to lower customers' carbon footprint, and potentially "help you live longer."

3.9     Daily Harvest claims to work directly with farmers to grow organic products and "increase biodiversity" while avoiding synthetic chemicals.

3.10    Daily Harvest manufactures, packages, distributes and/or sells, directly all its products, including the French Lentil + Leek Crumbles, to customers through online sales, through its own standalone retail stores in Chicago and Los Angeles. Additionally, Daily Harvest provides samples to a small number of customers, including social media influencers, to increase visibility and, ultimately, sales of the products.

3.11    Plaintiff purchased through online subscription Daily Harvest's French Lentil + Leek Crumbles and on two occasions consumed it. The product was contaminated and caused Plaintiff's injuries described below.

3.12    The French Lentil + Leek Crumbles consumed by Plaintiff contained contaminated ingredients, manufactured, packaged, distributed and/or sold by the Defendants, including Defendants Daily Harvest and Second Bite.

3.13    The Defendants John Doe Corporations 1-5 are entities that (along with Daily Harvest and Second Bite) either manufactured and distributed the French Lentil + Leek Crumbles product, or manufactured, distributed, imported, packaged, brokered, or grew and harvested the contaminated ingredients used in the manufacture of the French Lentil + Leek Crumbles product that caused Plaintiff's illness and the subject outbreak.

## PLAINTIFF'S ILLNESS

4.1    On May 3, 2022, Plaintiff purchased Defendant's French Lentil + Leek Crumbles through her online subscription from Daily Harvest. She consumed the product on May 7, 2022. Later that same day, Plaintiff began experiencing abdominal pain and gastrointestinal distress. Plaintiff also suffered right shoulder pain.

4.2    On May 8, 2022, Plaintiff's abdominal pain and gastrointestinal distress became intolerable and was accompanied by nausea and a headache. Plaintiff described her pain on May 8th as a 9 or 10 out of 10.

4.3    On the morning of May 9, 2020, Plaintiff's husband took her to the emergency room at St. John's Ascension Medical Center for medical evaluation. Plaintiff was given pain medication and doctors ordered several blood tests, a urine sample, an ultrasound, and a CT scan.

She was later discharged and directed to eat a bland diet and manage her pain with over-the-counter pain medication.

4.4     Plaintiff once again purchased French Lentil + Leek Crumbles from Daily Harvest on March 17, 2022, which she consumed on May 28, 2022, for lunch. By 7 AM on May 29, 2022, Plaintiff was again experiencing abdominal and shoulder pain. By the early morning on May 30, Plaintiff's pain was severe enough to again warrant hospitalization and treatment with pain medication.

4.5     Testing conducted at the St. John's Ascension Medical Center Emergency Room revealed elevated liver enzymes, and Plaintiff was admitted to the hospital for further treatment. Plaintiff remained hospitalized for four days, during which time she was administered pain medication, and diagnosed with liver and gallbladder dysfunction. Plaintiff was informed this condition may cause her pain indefinitely.

4.6     Plaintiff met with her primary care doctor on June 7, 2022 and was advised by her doctor that instead of attempting to manage her pain, the recommended course of action was to remove her damaged gallbladder.  And on June 24, 2022, Plaintiff underwent surgery to remove her gallbladder.

4.7     Plaintiff has sustained serious personal injuries; suffered, and will continue to suffer, significant pain and other physical discomfort; incurred, and will continue to incur, substantial medical expenses; has missed, and will likely miss in the future, work and time necessarily dedicated to advancement in her profession; and remains at risk for future health complications with damages far exceeds $75,000.00, the jurisdictional threshold of this court.

## CAUSES OF ACTION

### Strict Liability – Count I

5.1     Plaintiff repeats and realleges all the above allegations contained in paragraphs 1.1 through 4.7.

5.2     At all times relevant hereto, the Defendants were the manufacturers, packagers, distributors and/or sellers of the contaminated food product, or the product's contaminated ingredients, that was purchased and consumed by Plaintiff.

5.3     The contaminated food product that the Defendants manufactured, packaged, distributed, and/or sold was, at the time it left the Defendants' control, defective and unreasonably dangerous for its ordinary and expected use by the intended public, including Plaintiff, because Defendants' products were contaminated by a substance injurious to human health.

5.4     The contaminated food product that the Defendants manufactured, packaged, distributed, and/or sold was delivered to the Plaintiff without any change in its defective condition. The contaminated food product that the Defendants manufactured, packaged, distributed, and/or sold was used by Plaintiff in the manner expected and intended.

5.5     The Defendants owed a duty of care to the public, including Plaintiff, to manufacture, package, distribute and/or sell food that was not contaminated, that was fit for human consumption, that was reasonably safe in construction, and that was free of pathogenic bacteria or other substances injurious to human health.  The Defendants breached this duty.

5.6     The Defendants owed a duty of care to the public, including Plaintiff, to manufacture, package, distribute and/or sell food that was fit for human consumption, and that was safe to consume to the extent contemplated by a reasonable consumer.  The Defendants breached this duty.

5.7     As a direct and proximate result of the defective and unreasonably dangerous condition of the contaminated food product that the Defendants manufactured, packaged,

8

distributed and/or sold, as set forth above, Plaintiff sustained injuries and damages in an amount to be determined at trial.

## Breach of Warranty – Count II

5.8    Plaintiff repeats and realleges all the above allegations contained in paragraphs 1.1 through 5.7.

5.9    The Defendants are liable to the Plaintiff for breaching express and implied warranties that it made regarding its food product that Plaintiff purchased and consumed.  These express and implied warranties include the implied warranties of merchantability and/or fitness for a particular use.  Specifically, the Defendants expressly warranted, through their sale of food to the public and by the statements and conduct of their employees and agents, that the food that they manufactured, packaged, distributed and/or sold was fit for human consumption and not otherwise adulterated, contaminated, or injurious to health.

5.10    The contaminated food that the Defendants sold to Plaintiff would not pass without exception in the trade and was therefore in breach of the implied warranty of merchantability.

5.11    The contaminated food sold to Plaintiff was not fit for the uses and purposes intended, *i.e.,* human consumption; thus, the sale of this product to Plaintiff constituted a breach of the implied warranty of fitness for its intended use.

5.12    As a direct and proximate cause of the Defendants' breach of warranties, as set forth above, Plaintiff sustained injuries and damages in an amount to be determined at trial.

## Negligence – Count III

5.13    Plaintiff repeats and realleges all the above allegations contained in paragraphs 1.1 through 5.12.

5.14    Defendants owed to Plaintiff a duty to use reasonable care in the manufacture, packaging, distribution, and/or sale of their food product, the observance of which duty would have prevented or eliminated the risk that Defendants' food product would become contaminated with any dangerous pathogen.  Defendants, however, breached this duty and were therefore negligent.

5.15    Defendants had a duty to comply with all federal, state, and local statutes, laws, regulations, safety codes, and provisions pertaining to the manufacture, distribution, storage, and sale of their food product, but failed to do so, and were therefore negligent.  Plaintiff was among the class of persons designed to be protected by these statutes, laws, regulations, safety codes and provisions pertaining to the manufacture, packaging, distribution, and sale of similar food products. Defendants, however, breached this duty and was therefore negligent.

5.16    Defendants had a duty to properly supervise, train, and monitor their respective employees, and to ensure that their respective employees complied with all applicable statutes, laws, regulations, safety codes, and provisions pertaining to the manufacture, packaging, distribution, and sale of similar food products. Defendants, however, breached this duty and was therefore negligent.

5.17    Defendants had a duty to use ingredients, supplies, and other constituent materials that were reasonably safe, wholesome, and free of defects, and that otherwise complied with applicable federal, state, and local laws, ordinances, regulations, codes, and provisions and that were clean, free from adulteration, and safe for human consumption. Defendants, however, breached this duty and were therefore negligent.

5.18    As a direct and proximate result of Defendants' negligence as described above, Plaintiff sustained injuries and damages in an amount to be determined at trial.

10

### Negligence *Per Se* – Count IV

5.19    Plaintiff repeats and realleges all the above allegations contained in paragraphs 1.1 through 5.18.

5.20    Defendants had a duty to comply with all applicable state and federal regulations intended to ensure the purity and safety of their food product, including the requirements of the New York State's Agriculture and Markets Law and the Federal Food, Drug and Cosmetics Act (21 U.S.C. § 301, *et seq.*).

5.21    In breach of this duty, Defendants failed to comply with the provisions of the health and safety acts identified above, and, as a result, were negligent *per se* in their manufacture, distribution, packaging and/or sale of adulterated food.

5.22    As a direct and proximate result of conduct by Defendants that was negligent *per se*, Plaintiff sustained injuries and damages in an amount to be determined at trial.

## DAMAGES

6.1    Plaintiff has suffered general, special, incidental, and consequential damages as the direct and proximate result of the acts and omissions of Defendants, in an amount that shall be fully proven at the time of trial.  These damages include but are not limited to past and future pain and suffering, past and future damages for loss of enjoyment of life, past and future emotional distress, past and future medical and related expenses, including pharmaceutical expenses, travel and travel-related expenses, past and future lost wages, and all other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

## JURY DEMAND

7.1    Plaintiff hereby demands a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment against the Defendants as follows:

A.      Ordering compensation for all general, special, incidental, and consequential damages suffered by Plaintiff because of Defendants' conduct.

B.      Awarding Plaintiff costs and expenses, including reasonable attorneys' fees to the fullest extent allowed by law; and

C.      Granting all such additional and/or further relief as this Court deems just and equitable.

DATED:      July 15, 2022
            New York, New York

**HEISMAN NUNES & HULL LLP**

By:   /s/Paul V. Nunes
      Paul V. Nunes, Esq.
      Bar No.: PN2853
      69 Cascade Drive
      Suite 102
      Rochester, New York 14614
      Telephone: (585) 270-6922
      pnunes@hnhattorneys.com

**MARLER CLARK, LLP, PS**

By:   /s/ William D. Marler
      William D. Marler, Esq., *pro hac vice* pending
      The Standard Building
      1012 1st Avenue, Fifth Floor
      Seattle, Washington 98104
      Telephone: (206) 346-1888
      bmarler@marlerclark.com

      *Attorneys for Plaintiffs*